UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 7 |
| KRIS DANIEL ROGLIERI, | Case No.: 24-10157 (REL) |
| Debtor. | |
| PAUL A. LEVINE, as Receiver of Prime Capital Ventures LLC, | |
| Plaintiff, | Adv. Pro. No. 24-90010 (REL) |
| KRIS DANIEL ROGLIERI, | |
| Defendant. | |

## RECEIVER'S OBJECTION TO MOTION TO DISMISS COMPLAINT

Plaintiff Paul A. Levine, Esq., the permanent receiver (the "Receiver") for Prime Capital Ventures LLC ("Prime"), by and through Prime's undersigned proposed counsel, respectfully submits this objection (this "Objection") to the *Motion to Dismiss Complaint* on behalf of Kris Daniel Roglieri, by Hogan Lovells US LLP as counsel, [Adv. Pro. Docket Nos. 5, 8] (the "Motion"). In support of this objection, Prime respectfully represents as follows:

### PREPETITION BACKGROUND

1. The Receiver is the permanent receiver of Prime, having first been appointed as temporary receiver by order of the United States District Court for the Northern District of New York (the "District Court") entered January 12, 2024, and then as permanent receiver by Memorandum-Decision and Order of the District Court entered January 24, 2024 (the "Receiver Order") in the civil action captioned *Compass Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al.* (24-cv-55 NDNY). *See* accompanying Levine Declaration, Exhibit A.

2. On January 16, 2024, ER Tennessee, LLC ("ER Tennessee"), one of Prime's creditors, commenced an action against Prime in the Supreme Court of New York, New York County (the "State Court"), asserting causes of action for, among other things, breach of contract and fraudulent conveyance. *See ER Tennessee, LLC v. Prime Capital Ventures, LLC*, et al., Index No. 650231/2024 (the "ER Litigation").

3. On April 5, 2024, in response to a question regarding whether prior Prime management or the Receiver had authority to defend the ER Litigation, the State Court issued an order to show cause why the filings of Prime's prior management should not be stricken in light of the Receiver Order granting the Receiver authority (the "ER OTSC").

4. On April 18, 2024, after briefing in response to the ER OTSC, the State Court issued a Decision and Order (the "ER Decision and Order"), which held that the Receiver Order granted the Receiver the authority to handle the legal affairs of Prime. *See* accompanying Levine Declaration, Exhibit C.

5. More specifically, the ER Decision and Order provides, in relevant part:

> Defending lawsuits is part of the "operations and business affairs of" a company and thus is within the scope of the receivership order. Deciding whether to settle or litigate, and indeed how much to spend on attorneys, can materially affect a company's finances. Given the nature of the receiver's role, the context of his appointment, and the breadth of his duties, it seems doubtful that the district court intended to carve out directing the company's legal affairs from the scope of his authority. After all, the district court permitted the federal third-party action commenced by the receiver to proceed. Presumably the district court would not have done so if the receiver was not in charge of the company's legal affairs.

*See* ER Decision and Order (internal citations omitted).

**BANKRUPTCY BACKGROUND**

6. On May 14, 2024, the Receiver filed a voluntary petition on behalf of Prime for relief under chapter 11 of the Bankruptcy Code (the "Prime Chapter 11 Case") with the United

2

States Bankruptcy Court for the Northern District of New York (this "Court"), commencing Prime's Chapter 11 Case, case no. 24-10531.

7. The Receiver continues to manage the Prime's affairs. No request for a trustee or examiner has been made in this Chapter 11 Case.

8. Prime's former sole member, Kris Daniel Roglieri, is currently the debtor ("Roglieri" or the "Debtor") in this Chapter 7 bankruptcy case. The Debtor's Chapter 7 case was converted from a Chapter 11 Subchapter V bankruptcy case on May 15, 2024 [Case No. 24-10157, Bankr. N.D.N.Y.] (the "Roglieri Bankruptcy Case").

9. Christian H. Dribusch (the "Trustee") was appointed as the chapter 7 trustee in the Roglieri Bankruptcy Case on May 15, 2024. Pursuant to the *Statement of Ratification of Prime Capital Ventures, LLC Bankruptcy Filing* dated July 9, 2024 [Prime Chapter 11 Case, Docket No. 66], the Trustee ratified the filing of the Prime Chapter 11 Case. *See* accompanying Levine Declaration, Exhibit D. The Trustee has ratified the Chapter 11 filing. [Case No. 24-10531, Docket No. 66].

10. More detailed information regarding Prime's history, business operations, and the events leading up to the Prime Chapter 11 Case is set forth in the Receiver's *Adversary Proceeding Complaint Objecting to Chargeability and Discharge*, Adv. Proc. No. 24-10157 [Adv. Pro. Docket No. 1].

**PRELIMINARY STATEMENT**

11. The Motion makes no sense given the current procedural posture of the Roglieri and Prime bankruptcy cases. The Hogan firm has been discharged as counsel for Prime, and further it has sought permission to withdraw as counsel for Roglieri [Adv. Pro. Docket Nos. 10, 12]. While the Hogan firm was not, ultimately, disqualified on motion by the District Court, the

District Court laid out the tangled web of conflicts it has created for itself. *See* accompanying Levine Declaration, Exhibit B.[1] The Receiver long ago concluded that Hogan should not have been allowed to burn through $850,000 it took in retainer monies that appear to have been derived from the victims of Roglieri's fraud.

12. With that in mind, the Receiver suggested to the Hogan firm that the Motion be adjourned pending adjudication of Hogan's pending motion to withdraw as counsel for Roglieri, which is currently returnable before this Court on July 31, 2024. Regrettably, the Hogan firm did not consent, necessitating the expenditure of cost, time and effort to object to this Motion.

## ARGUMENT

### a. The Debtor's Argument has already been Litigated Before and Decided by the State Court

13. The argument of the Hogan firm has already been considered, and rejected, by the State Court in the ER Litigation. *See* accompanying Levine Declaration, Exhibit C.

14. The Debtor is collaterally estopped and precluded from raising the issue of the Receiver's authority to handle Prime's legal affairs, including, the commencement of this Adversary Proceeding, because this issue has already been "actually adjudicated" by the State Court. *See Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) ("Collateral estoppel, or issue preclusion, prevents party from relitigating only those issues actually adjudicated, and essential to judgment, in prior litigation; unlike claim preclusion, collateral estoppel does not prohibit party from litigating issues that were never argued or decided in prior proceeding.")

---

[1] The District Court spent 12 pages analyzing the serious and self-acknowledged conflicts of interests of the Hogan firm. Ultimately, the District Court felt constrained by the law in the Second Circuit that disqualification is a disfavored remedy. Nonetheless, the District Court noted its "sincere and well-founded concerns about Hogan Lovell's representation" and that "it was truly concerned by some of the conduct presented to the Court by Hogan Lovells through their counsel" and reminded counsel of "ethical obligation to the Court, including those of candor and truthfulness." The Receiver has also had serious concerns in this regard for quite some time. The Hogan firm appeared on behalf of several defendants in the Third Party Action that the Receiver commenced. That action was filed to protect Prime and to recover monies fraudulently conveyed from Prime at the hands of Mr. Roglieri. Yet the Hogan firm, whose first client in this affair was Prime, fought hard to have that Third Party Action dismissed and now to fight to have this adversary proceeding dismissed. These obvious conflicts have never been explained or justified by the Hogan firm.

4

15. In the Motion, the Debtor asserts that the Receiver lacked standing to file the Adversary Proceeding Complaint because he exceeded the authority granted to him under the Receiver Order. The Debtor further asserts that Prime, not the Receiver, retained the right to direct Prime's legal affairs and it did not authorize the filing of the Adversary Proceeding Complaint. However, what the Debtor fails to advise this Court, is that the Debtor has already challenged the Receiver's authority, specifically the Receiver's authority to litigate actions on behalf of Prime, and the Debtor lost.

16. As set forth above, in ER Litigation, the Debtor argued that the Receiver did not have the authority to defend the ER Litigation on behalf of Prime. As a result, the State Court issued the ER OTSC. On April 18, 2024, after briefing in response to the ER OTSC, the State Court issued a Decision and Order (the "ER Decision and Order"), which held that the Receiver Order granted the Receiver the authority to handle Prime's legal affairs, including litigation. *See* accompanying Levine Declaration, Exhibit C. The State Court reasoned that because the District Court permitted the federal third-party action commenced by the Receiver to proceed, it would not have done so if the Receiver was not in charge of Prime's legal affairs. The State Court's order has not been appealed and is final.

17. Thus, through the Motion, the Debtor is seeking another bite at the apple to once again challenge the Receiver's authority to handle Prime's legal affairs, an issue that has already been decided by the State Court; a decision which, respectfully, this Court should abide. Therefore, the Debtor is collaterally estopped and precluded from asserting such argument.

b. **The Motion is Moot**

18. As set forth above, on July 9, 2024, the Trustee expressly ratified the filing of the Chapter 11 Case. *See* accompanying Levine Declaration, Exhibit D. As such, the Receiver's

5

actions before this Court are properly authorized. Therefore, the Motion has been rendered moot, and should be denied in all respects.

### c. Irrespective of Issue Preclusion and the Ratification of the Receiver's Actions, the Receiver has the Authority to Commence and Prosecute the Adversary Proceeding

19. The January 12, 2024 and January 24, 2024[*] decisions and orders of the District Court are clear as to the expansive authority of the Receiver and should be interpreted to preclude arguments to the contrary that cherry pick one provision of the January 24th decision and order. If a particular power was not expressly stated in the order but is encompassed with the broad grant of authority that was conveyed, is the Receiver hamstrung in what he can do to protect Prime's assets? That cannot be the determination and certainly is not what the District Court intended as shown by the varied litigation relief it granted in its subsequent March 19th decision and order. *See* accompanying Levine Declaration, Exhibit B.

20. As Roglieri correctly cites, the January 24th order stated, among other things, that "[t]he Receiver's authority hereunder shall be, and hereby is, vested in and extended to all of Defendants' real property, equitable property, tangible and intangible property, interests, or assets of any nature, wherever located." *See* accompanying Levine Declaration, Exhibit A, page 22.

21. Roglieri prefers to compare that order with the prior temporary restraining order and, in doing so, ignores that the January 24th, on the very same page, also stated:

> "The Receiver shall have and retain and is hereby granted exclusive dominion and control over all of the assets, books and records, <u>operations and business affairs of Defendants</u>."

---

[*] Notably, the January 26, 2024 Notice of Appeal to the United States Court of Appeals for the Second Circuit filed by the Hogan firm on behalf of Prime was withdrawn by stipulation so ordered by that Court on June 17, 2024.

6

"The Receiver <u>is authorized to take any and all actions the Receiver, in his sole discretion, deems appropriate in order to ascertain the amount the location of Defendants' assets</u>."

"The Receiver <u>shall have the duties and responsibilities of a receiver under law</u>…."

*See* accompanying Levine Declaration, Exhibit "A", page 22 (emphasis added).

22.     The Receiver agrees that the Receiver's authority is prescribed by the court's order appointing that receiver.  The citations by Roglieri to *Daro Indus., Inc. v. RAS Enters, Inc.*, 44 N.Y.2d 969, 979 (1978), *Security Pac. Mortg. & Real Estate Services, Inc. v. Republic of Philippines,* 962 F.2d 204, 211 (2d Cir. 1992) and *Jacynicz v. 73 Seaman Assocs.* 270 A.D.2d 83, 85 (1st Dept. 2000) merely beg the question of what did the District Court intend in using the expansive language set forth above?

23.     That answer is determined from the language quoted above and by later rulings of the District Court.  Defending (and by analogy, prosecuting, as in this Adversary Proceeding) lawsuits is plainly within "operations and business affairs" of Prime as is taking "any and all actions [the Receiver] deems appropriate in order to ascertain the amount and location of Defendants' assets."

24.     But this Court need not rely on the language of the District Court alone.  In addition, it can rely upon what the District Court in fact has allowed the Receiver to do since January 24th order. The March 19th order allowed the Receivers' third party action to continue against several defendants. It also granted, in part, the Receiver's motion for a pre-judgment attachment. Roglieri cannot square his current position with the District Court allowing the Receiver to continue with litigation that the Receiver commenced <u>after</u> entry of the January 24th order. *See* accompanying Levine Declaration, Exhibit B, page 71.

7

25. Roglieri's argument logically does not make sense. Where is the line drawn? What is a "business affair" and what is not? If defending a lawsuit is not a business affair, is prosecuting a lawsuit one, as the District Court obviously agreed? Is responding to a non-party subpoena in a lawsuit a business affair? In fact, due to Roglieri's rampant fraud, the Receiver was obligated to and did address lawsuits in other courts and in other states including Texas. The Receiver cannot rely upon Roglieri to do what is right <u>for Prime</u> and must act as he sees fit and in accordance with his duties.

## **CONCLUSION**

WHEREFORE, the Receiver respectfully requests that the Court deny the Debtor's Motion with prejudice, and grant the Receiver such other and further relief as may be just, necessary and proper.

Dated: July 10, 2024
       Syracuse, New York

BOND, SCHOENECK & KING, PLLC

By: */s/ Stephen A. Donato*
   Stephen A. Donato (Bar Roll 101522)
   Justin S. Krell (Bar Roll 704364)
   Andrew S. Rivera (Bar Roll 700712)
   One Lincoln Center
   Syracuse, New York 13202
   Telephone No.: (315) 218-8000
   Facsimile: (315) 218-8100
   Emails:   sdonato@bsk.com
             jkrell@bskl.com
             arivera@bsk.com

   *Proposed Counsel for*
   *Prime Capital Ventures, LLC*

8